ELIZABETH MACKEY, adm'x, and CHAUNCEY IVES, adm'r &c. of Abram Mackey, deceased, *vs.* THE NEW YORK CENTRAL RAIL ROAD COMPANY.

In an action against a rail road company, to recover damages for wrongfully causing the death of the plaintiffs' intestate, by the negligence of its agents in omitting to sound the whistle of the locomotive, or ring the bell, at a street-crossing, as required by the statute, it was proved that the deceased, while driving his team towards the rail road, at the crossing, was told by the witness that " the cars were coming ;" that he turned his head towards the witness, and then struck his horses with the lines, and went upon the track, where he was struck by the locomotive, and killed. *Held*, that upon this positive testimony, unexplained and uncontradicted, the justice, at the trial, should have nonsuited the plaintiffs, on the ground of the intestate's own negligence; and that a verdict in favor of the plaintiffs was against the evidence, and could not be upheld. JOHNSON, J. dissented.

The rule of liability, in such cases, is correctly stated in *Sheffield* v. *The Rochester & Syracuse Rail Road Company*, (21 *Barb.* 339.)

Where it was proved that the person for whose death by means of a collision the action was brought, was not a stranger at the place in question, but was at work there, drawing and piling wood, and had been so engaged the whole of the previous season; and that 24 trains of cars passed that point daily, at fixed hours; *it was held* that it was the height of imprudence and heedlessness for him to approach the rail road track and attempt to cross the same,

with his team, about the time a train was due, until he had ascertained that it was safe to do so. And that the fact of there being a wood-pile in the way of his seeing far along the track, did not diminish, in the slightest degree, his duty to be careful, but on the contrary, imposed upon him the obligation of still greater caution.

In such a case, a party is bound to exercise care and diligence, and foresight in proportion to the danger to be avoided, and the fatal consequences involved in his neglect.

A verdict should not be set aside, merely because the court would have come to a different conclusion from that of the jury, on the force and weight of the testimony.

APPEAL from a judgment entered at a special term, upon the verdict of a jury. The action was brought to recover damages of the defendants for their wrongful act in causing the death of Abram Mackey, the plaintiffs' intestate. Mackey was run over and killed, on the 24th of December, 1854, by the defendants' locomotive and express train of cars, while he was crossing, with his team and sleigh, their rail road, at the highway crossing at the Savannah station, in the county of Wayne. It was claimed, in the complaint, that the defendants' agents, on approaching the station, at the time in question, neglected to sound the whistle or ring the bell, as required by the statute. The proof was that Mackey, who had been engaged, for some time previous, in drawing and piling wood at the rail road station at Savannah, was crossing the track northwardly with his team, as the express train was going by that station from the west. The locomotive struck and killed him. Some witnesses did not hear the signals of either bell or signal: some heard the one and not the other, and some heard both. The defendants' wood-house and several piles of wood stood south of and within 100 feet of the track, and west of the highway, obstructing the view of a person approaching from the south. As Mackey, standing on his empty sleigh, his horses walking, approached within 40 feet of the track, he was warned by the witness Remer, *that* "*the cars were coming*." He turned an instant and looked toward the witness, without stopping; then suddenly struck

his horses, drove upon the track, and as he was crossing, the engine struck him. These facts were not controverted. A motion for nonsuit was denied, the court leaving it to the jury to say whether this was negligence in Mackey.

The court charged the jury among other things, that they were to consider the question of negligence on the part of the defendants; that they were guilty of negligence if they omitted to give the signal, either by ringing the bell or blowing the whistle. That they were also guilty in case they did give such signal, if the jury should find that by reason of the position of the wood and other circumstances, extra care was made necessary for the deceased, in order to avoid injury, which they omitted to employ. That the defendants might, by their own acts, have made something necessary on their part beyond what the statute required, in order to avoid the imputation of negligence. That another question was: was the deceased guilty of negligence in crossing the rail road? That in passing upon this question, the jury would bear in mind and consider his opportunity to see and know what obstructions, if any, there were to prevent his view, which had been created by the rail road company, and his acquaintance with the premises and time of the passing of the trains. That if the deceased was negligent, although the defendants were also negligent, the plaintiffs were not entitled to recover. That if the deceased's negligence contributed in any measure with the negligence of the defendants, the plaintiffs were not entitled to recover, notwithstanding negligence of the defendants. That the situation of the wood could only be regarded in considering the obligation of the defendants to provide greater care against accident. And that upon the question of damages, the rule was that the plaintiffs were entitled to such damages as the jury should find resulted from the death of the deceased to his widow and next of kin, not to exceed, however, the sum of $5000. To which charge of the court the defendants excepted. The jury rendered a verdict for the plaintiffs,

for $3000 damages. A motion for new trial being denied, after judgment the defendant brought this appeal.

*Underwood, Cox & Avery,* for the appellants. I. The *fact* of negligence in Mackey, was too self-evident and palpable to be left as a question for the jury. He was neither blind nor deaf; habituated to the locality, and aware that the train was due, unable to see to the westward, he drove forward without stopping, looking, or listening. Besides all this, the bell was ringing; the shrieker sounded twice, and when within twenty feet of the track *he was advised that the cars were coming.* Under these circumstances, it is impossible to maintain that Mackey *was free from negligence.*

II. Whatever negligence may be properly imputed to the defendants, cannot qualify or relieve the negligence of Mackey. (*Spencer* v. *Utica & Sch. R. R.* 5 *Barb.* 338. *Sheffield* v. *Roch. & Sy. R. R. Co.,* 21 *id.* 339. *Butterfield* v. *Forrester,* 11 *East,* 60. *Hartfield* v. *Roper,* 21 *Wend.* 615. *Rathbun* v. *Payne,* 19 *id.* 400. *Brown* v. *Maxwell,* 6 *Hill,* 592. *Lane* v. *Crombie,* 12 *Pick.* 177. *Bosworth* v. *Swanzey,* 10 *Metc.* 363. *Adam* v. *Carlisle,* 21 *Pick.* 146. *Wilson* v. *Susquehanna Turnpike Co.* 21 *Barb.* 70.) For it is obvious that if the wood-house, sawing machine and wood piles, or all or any other obstructions of sight and sound had been erected by some persons other than the defendants, *the negligence of Mackey* would have been the same. Such obstructions would not make it prudent for Mackey to *go it blind.* (*Haring* v. *N. Y. & Erie R. R. Co.,* 13 *Barb.* 9.) The *silent rails before him,* were of themselves a warning for great precaution, and an advertisement of danger.

III. It was error to charge that "*the situation of the wood can only be regarded in considering the obligation of defendants*" for greater care on their part. It was equivalent to saying that if by the *negligence of the defendants,* the view of Mackey was obstructed by the action of defendants, he was relieved from the obligation of other precautions to guard

against the danger. Or in other words, the more dangerous the approach has been rendered, the less occasion for precaution. And this, in reference to a man who had been drawing and piling wood upon that spot, "*all the season.*" It was equivalent to saying that the greater negligence of the defendant, neutralized and compensated for the neglect of Mackay; and the effect of this was probably to mislead the jury and prevent their inquiring into the negligence of Mackey. The defendant claims, that in estimating the degree of precaution to be observed by Mackey, the question of *who caused those obstructions* of his view, is entirely foreign to the subject; and that it is entirely immaterial whether the view was obstructed by a school house, a church, or a wood house and wood pile; that Mackey was bound to be himself free from negligence, and to adapt his precautions to the circumstances of the occasion, no matter how great the negligence of the defendants.

IV. The defendant was entitled to a nonsuit on the ground of Mackey's negligence in not taking any precaution to avoid the approaching train; and in disregarding the special warning. (*See cases cited under point II. Brooks* v. *Buffalo and Niagara Falls R. R. Co., recently decided in Court of Appeals, not reported.(a) Brendell* v. *Buffalo & State Line R. R. Co. opinion of Masten, J. Super. Court of Buffalo.*)

(*a*) This case, as presented in the supreme court, is reported 25 *Barb.* 600. An appeal was taken to the Court of Appeals; where the judgment of the supreme court was *affirmed*. The following opinions were delivered, on the decision of the case in the Court of Appeals. They are given in this connection, because of their direct bearing upon the principal case, and because they have not been, and perhaps may not be, elsewhere reported. They are worthy of preservation. For the same reasons the case of *Brendell* v. *The Buffalo and State Line Rail Road Co.,* is also published here. That case seems to have arisen out of the same transaction, and to have been decided upon the same or very similar facts, as the case of *Dascomb* v. *The Buffalo and State Line Rail Road Co., ante, p.* 221.

BROOKS *vs.* THE BUFFALO AND NIAGARA FALLS RAIL ROAD CO.

CRIPPEN, J. I agree with the supreme court, that the undisputed testimony very clearly established that the plaintiff was guilty of negligence on his part,

Mackey *v.* New York Central Rail Road Co.

*F. E. Cornwell,* for the respondents.   I. There was no proof that the defendants gave the signal required by statute, by *sounding their steam whistle* at intervals, for the space of eighty rods from the crossing.   (*Sess. Laws of* 1850, *p.* 232, § 39.)   The testimony on this subject is as follows :   The defendants' witness, H. Baggerly, testifies that the whistle was sounded as the train emerged from the woods, 80 to 150 rods

which at least contributed to, if it did not wholly cause the collision complained of.

It seems to me that no one carefully reading the testimony, can doubt but that the plaintiff was guilty of gross carelessness in driving his team on the rail road track.   Allowing that he did not stop his team on the track as some of his witnesses say he did, yet he knew the time the afternoon train would pass along the track.   It was the regular train from Buffalo to the Falls, and passed the same time every afternoon.   The plaintiff lived within a few rods of the road, and must have known of the afternoon train and also the regular time for its passing along the track ; it was incumbent upon him to keep a look-out, or keep away from the road.   He could see the rail road several rods before reaching the crossing, and if due care had been observed by him, he could not have failed of discovering the approaching train, to avoid the collision.

In my opinion, the judge should have granted the nonsuit, after the testimony was closed, or should have instructed the jury to render a verdict in favor of the defendant.   It was sufficient for the defense that the plaintiff resided near the rail road where the collision occurred, and knew the time of the afternoon train passing down the road.   He therefore was warned to keep his team out of reach of the cars.   It is clear to my mind that the plaintiff was guilty of negligence on his part which contributed to the injury that he received by the collision.

If this is a correct view of the case, then the law is well settled that the plaintiff could not recover in the action.   It cannot be necessary to cite the authorities to sustain this principle.

My opinion is the judgment of the supreme court must be affirmed.

JOHNSON, J.   The supreme court was, I think, right in reversing the judgment in this cause and granting a new trial.   The point was whether the plaintiff had been guilty of negligence, which contributed to the injury complained of.   It appeared conclusively that the plaintiff stopped upon the track while driving across it, and if he had continued his course the accident would not have occurred. . The attempt to cross a rail road track without looking up and down it to see if any train is approaching, seems to me to be such an act as a man of ordinary prudence would hardly be guilty of.   To stop upon it without taking that precaution must be reckoned a still greater departure

from the crossing, and that it was a continuous sound for half a minute. Gideon Ramsdell, also the defendants' witness, swears that he was in the woods a *mile* west of the crossing, and that when the train had passed him, and had got *half way* to the station, which would be 160 rods from the crossing, the whistle sounded a continuous sound, and that it did not sound again until it sounded for brakes, which, as all

from prudent conduct. (*Spencer* v. *Utica and S. R. R. Co.*, 5 *Barb.* 33–7. *Haring* v. *New York and Erie R. R. Co.*, 13 *id.* 9.)

Judgment affirmed.

J. G. BRENDELL *vs.* THE BUFFALO AND STATE LINE R. R. Co.

The plaintiff having rested, the defendant moved for a nonsuit. *P. G. Parker* and *Geo. W. Houghton,* for the plaintiff. *H. W. Rogers,* for the defendants.

MASTEN, J.   For the purpose of the motion, the facts must be considered in the most favorable view in which they can be reasonably stated in support of the plaintiff's right of action. As the case now stands, it is for the jury to determine whether or not the defendants rang the bell or blew the whistle upon the engine. This is sufficient to carry the question of negligence *on the part of the defendants* to the jury. The only question then upon the motion is, whether the plaintiff was guilty of any negligence, concurring to produce the accident.

The facts, stated favorable for the plaintiff, are these : The rail road of the defendants has been operated ever since 1851. It crosses a public highway in the town of Hamburg, known as the Camp road, at grade, and nearly at right angles. The rail road runs nearly north and south, and the highway east and west. The defendants have a brick tank house situate 7 feet westerly from and parallel with the west rail of the rail road, and 44 feet northerly from the center of the traveled track of the highway. It is 21 feet by 14 feet, its east and west sides being the longest. It is 16 feet high, and was built in 1853. The farm of William Dascomb is situate upon the south side of the Camp road, and upon both sides of the rail road. The house and farm of Dascomb are situate upon the Camp road, the barn 18 chains 57 links westerly from the rail road crossing, and the house three chains west of the barn. The highway, from a point two or three chains east of the barn, descends towards the rail road. Approaching the rail road on the Camp road from the west, when 120 feet west of the rail road you can see a train of cars coming from the north, when they reach a point upon the rail road 28 rods north of the Camp road, and until they get to a point five rods north of the highway, when the view is intercepted by the tank house. And you can thus continue to see them until you reach a point 20 feet west of the rail road, when the view is entirely intercepted by the tank house. At a point in the highway 10 feet west of the west rail of the rail road, you can see the rail road past the east side of the tank house to a point

witnesses agree, was *at* the crossing. It therefore appears from the testimony of these witnesses, that the whistle was sounded from a point, say 160 rods from the crossing, for half a minute. As the speed of the train was, as Hoffman the engineer testifies, thirty miles an hour, half a minute would carry the train eighty rods, which would bring it to the point where by the statute the signal should *begin,* and be

four rods north of the highway. On the afternoon of the 5th of June, 1855, the regular passenger train of the defendants from the north, going south, crossed the Camp highway about 20 minutes behind time. The plaintiff was in the employment of William Dascomb. Both he and Dascomb were familiar with the highway, the rail road and the ground in the vicinity of the crossing. They knew the time upon which this train should pass the Camp road, and that it was after the time; but they did not know whether or not the train had passed. Dascomb, his son, (a mere lad,) and the plaintiff were in a one-horse lumber wagon. Dascomb and his son were sitting upon the seat, and the plaintiff was in the back part of the wagon, riding upon his knees. They were going from the barn to that part of the farm lying east of the rail road. Neither of them looked towards the rail road north of the highway after they were within 30 rods of the rail road, until their horse was upon the rail road track. They drove their horse upon a trot, at the rate of 4 or 5 miles an hour down the descending ground and upon the rail road track without, at any time, slackening his pace. There was a ten-knot wind blowing from the southwest. Just as the horse was partly upon the west rail, the boy cried out, "Father, the cars are coming." Dascomb, who was driving, struck the horse with a whip, and the engine struck the wagon, killed the boy, and injured the plaintiff and Dascomb. The horse escaped. At about the time the boy called out, the plaintiff cast his eyes northerly upon the rail road, and saw the engine 25 or 30 feet from the horse. At the rate the defendants' train was running and Dascomb was driving, the wagon was about 70 feet west of the rail road when the engine passed the point 28 rods north of the Camp highway. When the wagon was 30 feet from the rail road the engine was 12 or 13 rods north of the highway. At the point in the highway (30 feet west of the rail road,) you can see a train of cars when they reach the point 28 rods north of the highway, and until they get to a point 12 rods north of the highway.

In disposing of this motion, the acts of Dascomb must be considered, as well as those of the plaintiff himself. The question of negligence on the part of the plaintiff is not to be solved solely by those .considerations which obtain between individuals; *it stands affected by considerations of public right and public safety.* Upon the undisputed facts of this case, I cannot doubt that the .plaintiff was guilty of negligence, and that with reasonable prudence on his

kept up at intervals to and over the crossing. Instead of *beginning* the signal there, they ended it there. By their own showing, therefore, the defendants did not comply with the statute in respect to *sounding the whistle.*

II. The evidence was conflicting as to the ringing of the bell.

part and on the part of those who were with him this sad accident would have been prevented.

Justice Johnson, in the Court of Appeals, in *Brooks* v. *The Buffalo and Niagara Falls Rail Road Company,* said: "To attempt to cross a rail road track without looking up and down it to see if any train is approaching, seems to me to be such an act as a man of ordinary prudence would hardly be guilty of." To the soundness of this remark I fully subscribe. Rail roads are among the best improvements of this great age of progress. Public accommodation, convenience, trade, commerce, and the intercourse between one section of the country and the other, carried on upon rail roads, demand that the greatest facilities should be given to this method of conveyance, and the highest attainable rate of speed licensed. A rail road is a public affair, and none the less so because it is constructed and operated by private capital and enterprise; and the permanent affairs of the public are not to be postponed to the concerns of individuals.

In view of the great rate of speed demanded upon rail roads by the spirit of the age, and constituting one of the great advantages of railroad traveling, and in view of the imminent danger, from collisions, to the lives and limbs of the thousands of persons adopting this method of traveling, I hold that no one has the right to cross a rail road track, without first taking every precaution to safety. The same reason that holds rail road companies to the strictest responsibility to the passengers, imposes upon every one who crosses the track of these great public thoroughfares, more than ordinary care not to jeopardize the lives of those who are availing themselves of the benefit of this great modern improvement in the mode of traveling. It seems to me that he who, without pausing or even looking, will drive upon a rail road track, is guilty of *more* than carelessness. The maxim *salus populi suprema lex* seems to me to be peculiarly applicable to the question under consideration. In this case the train was behind time, an occurrence which everybody knows occasionally happens, and from the imperfection of every thing human *must sometimes* happen. It is also claimed that the train was upon an unusually high rate of speed. A train must take the time necessary to fulfill its engagements with the public. The fact that the train was behind time, or upon a higher rate of speed than usual, did not absolve the plaintiff from the duty he owed to himself, to the rail road company, and to the innocent passengers with which the train was freighted. That the plaintiff must be without fault, in order to sustain this action, is a well settled rule of law. His negligence having contributed to the accident, he must be nonsuited.

The learned justice therefore very properly submitted this point as a question of fact to the jury, on which there was conflicting testimony, as to whether the whistle was sounded or the bell rung as required by statute. And the jury having on this question found, if they passed on it at all, against the defendants, on competent and sufficient testimony, the defendants were absolutely liable, and the finding cannot be disturbed.

III. The defendants were also liable by reason of their having wrongfully obstructed the public highway with their wood, so that the intestate could neither see his danger, nor when seen avoid it. The evidence is uncontradicted that the defendants piled their wood within the bounds of the highway, and on both sides of the traveled track, *so as to reduce a four rod road to the width of but* 16 *or* 18 *feet,* and that *to within a team's length,* from 8 to 12 feet *of the main track of the rail road.*

IV. There was no proof of any negligence in the deceased. The defendants claimed at the trial, and made the point at special term, that the deceased was warned of the approach of the train by the witness Remer. But Remer swears that "he does not know whether the deceased heard him or not." It is not rational to suppose that deceased *heard* the warning and then *rushed into the danger.* The jury have found that *he did not hear it;* for they were distinctly charged on this point, and as the judge at special term says in his opinion, "their decision cannot, upon the well settled rules applicable to such cases, be interfered with." If the warning was not heard, there can be no pretense of negligence. For the deceased was passing along the public highway, where he had a right to be, and was exercising every sense to avoid danger, except that of sight, which *he was prevented from exercising by the wrongful act of the defendants* in obstructing the road with their wood. It is certainly fair to argue, that if the road had been *its full width,* the deceased might have escaped when his danger became apparent, by turning his team around

either to the right or the left, which there was not room to do under the circumstances existing, hemmed in as he was on either hand by piles of wood from nine to twelve feet high.

V. At all events it is clear from the evidence that the deceased exercised all the care that a person could exercise in his situation, and this was all that could be required of him, and was sufficient to avoid the imputation of *negligence*. (*Beers* v. *Housatonic R. R. Co.*, 2 *Am. R. R. Cases*, 114.)

VI. The question whether the injury was produced by the negligence of the defendants, and whether the deceased was negligent, were questions of fact upon all the circumstances of the case, and the finding of the jury thereon is conclusive. (*Beers* v. *Hous. R. R. Co. supra. Moshier* v. *Utica and Chen. R. R. Co.*, 8 *Barb.* 427.)

VII. Upon the facts found, this court will not disturb the judgment, unless they are prepared to hold that *the law* requires the public, traveling on highways with horses and carriages, to stop their horses, get out of their carriages, and go to the track and look both ways for trains, in cases where the rail road company have voluntarily placed such obstructions in the way, *and in the road*, that travelers cannot see the approach of trains while sitting in their carriages. The judge at special term has stated *the whole of the case* in that sentence of his opinion from which this point is borrowed, and in which he in substance affirms that there is no such *law of the road*.

VIII. The defendants' exceptions are not well taken. That the motion for a nonsuit was not properly denied, will hardly be pretended, under the conflict of evidence presented at the trial, when the motion was made at the close of the whole proofs. And as to the exceptions to the charge, it is only necessary to read and consider the charge as a whole, to lead the court to the conclusion that it was eminently fair, certainly not unfair to the defendants, and that it contains no erroneous propositions of law.

IX. The defendants' motion for a new trial should be denied, and the judgment below affirmed with costs.

E. DARWIN SMITH, J.    The defendants moved for a nonsuit when the testimony was closed, on three grounds: 1. That the plaintiffs' evidence, uncontradicted, did not show negligence; 2. That the defendants' evidence disproved all negligence; and 3. That the plaintiffs' intestate was clearly guilty of negligence. The negligence for which the plaintiff claimed to recover was the omission of the defendants' agent to sound the whistles of the locomotive, or ring the bell, as required by the statute. By § 39 of the general rail road act (*Sess. L. of* 1850, *p.* 232) it was made the duty of the defendants " to have a bell placed upon each of its locomotives, and to have the same rung at the distance of at least 80 rods from the place where their rail road crosses any public road or street, to be kept ringing until it shall have crossed such road or street, or else to have attached to each locomotive engine a steam whistle, the same to be sounded at least 80 rods from the place where the rail road shall cross any such street or road, and be sounded at intervals until it shall have crossed such road or street." The plaintiffs called five or six witnesses to prove the neglect of the defendants' agents to ring the bell or sound the whistle, each of whom testifies that he heard no signal, either by the bell or whistle, indicating the approach of the train to the road crossing in question. This testimony was all negative, and quite inconclusive. It by no means followed because five or six persons, having no special reason to notice the ringing of that bell or sounding of the whistle, did not hear either sound, that therefore neither the bell was rung nor the whistle sounded. But it was doubtlsss sufficient *prima facie* evidence to go to the jury. The defense, to repel this evidence proved, by the positive affirmative testimony of two witnesses, the engineer on the locomotive and the fireman, that both the bell was rung and the whistle sounded, at the time, for more than the requisite distance; and their testimony is corroborated by three others who heard the whistle or the bell. If this was not a suit against a rail road company in behalf of a widow woman whose husband had been killed by the casualty which was the

subject of investigation, I should suppose that the positive affirmative testimony of the defendants, on the question of sounding the whistle and ringing the bell, was much more to be relied on and would rather be credited by a jury, than the mere negative uncertain testimony of the plaintiffs' witnesses. But we should not set aside a verdict merely because we should have come to a different conclusion from the jury on the force and weight of the testimony. (*Sullivan* v. *Dollen,* 13 *Illinois Rep.* 85. 12 *Conn. Rep.* 212. 2 *Gilman,* 618.)

It was proved by one witness who was standing two rods south of the track and on the west side of the road or highway, at the crossing, at the time of the accident, that the plaintiffs' intestate came out of the field into the road where the witness was standing, and was going towards the crossing when the witness spoke to him, and told him the cars were coming; "he, (the deceased,) was then going slowly, standing on his sleigh and his horses on a walk. As I spoke to him" (the witness said) "he turned his head towards me, and then struck his horses with the lines and went on to the track." The witness, on cross-examination, further said that he was about six feet from the deceased when he spoke to him; was not able to say whether he, (deceased,) heard him or not. "He turned and looked towards me when I spoke to him, and then with quick motion struck his horses with the lines." This witness is not contradicted, or in any way impeached. His testimony is clear and explicit, and is fully entitled to credit, for aught that appears in the case. I think upon this positive testimony, unexplained, uncontradicted or in any way weakened, the justice at the trial would have been warranted in nonsuiting the plaintiffs; and how the jury could say that the plaintiffs' intestate was not guilty of negligence, or that his negligence in no way contributed to his death, I cannot comprehend. If the rule that a plaintiff suing for negligence must himself be free from fault is a sound one; if a plaintiff whose negligence has contributed to the injury is not entitled to recover against a party no more guilty of negligence than himself, and this

rule of law is to be maintained, I cannot see how such a finding of a jury can be sustained. It is directly *against the evidence,* and we cannot uphold it or refuse to set it aside, unless we adopt the rule which is, I fear, quite prevalent in the jury box, that the same measure of justice is not to be meted out to a rail road corporation that is meted out to natural persons. The case of *Potter* v. *The New York Central Rail Road Co.,* decided at the last December term, was referred to by the counsel for the plaintiffs. That case was decided upon the argument, and I think, upon an entire misconception of the facts. I concurred in the decision, but upon looking into the case, since, I am satisfied that it was erroneously decided, and that a new trial should have been granted. The rule of liability in such cases is correctly stated in *Sheffield* v. *The Rochester and Syracuse Rail Road Co.,* (21 *Barb.* 339;) and according to that case the plaintiff should have been nonsuited in this case, and in that of Potter.

There are several exceptions to the charge, but they all relate to the wood pile of the defendants so placed as to obstruct the view of the plaintiffs' intestate when coming on to their track from the south side of the road. The judge told the jury that the situation of the wood could only be regarded in considering the obligation of the defendants to provide with greater care against accidents. Wood was piled all along, for many rods from the crossing, on the sides of the rail road track westward, so as to obstruct the view of a person at the crossing. In what respect this imposed any extra duty upon the defendants in running their cars I cannot conceive. The case contains no suggestions of any particular neglect of any duty in respect to the wood pile. The plaintiff was not a stranger there. He was at work drawing and piling wood at that station, and had been so engaged the whole of the last season. (The accident was on the 21st of December, 1854.) It was in proof that 24 trains of cars passed there daily, which must have been well known to the deceased, as well as their relative times, and the customary practice in passing that sta-

Mackey *v.* New York Central Rail Road Co.

tion. It seems to me that it was the height of imprudence and heedlessness for a man, with such knowledge, to approach and attempt to cross a rail road track about the time a train was due, till he had fully ascertained that it was entirely safe to do so; and that the fact of the location of this wood pile, perfectly well known to him, does not diminish his duty to be careful, in the slightest degree. The rather, in my opinion, did it increase his duty to greater carefulness. I cannot agree with the implication of the charge, that because there was a wood pile in the way of his seeing far along the track—a wood pile placed there by the defendants probably through the personal agency in part of the plaintiffs' intestate himself—he was therefore excused or relieved from exercising due care and diligence. I hold that he was bound to exercise care and diligence and foresight *in proportion to the danger to be avoided,* and the fatal consequences involved in his neglect. His vigilance should be quickened, not slackened, by the fact that he could not see the track sidewise, to any distance, till he got right on to it. He was bound to act as a prudent rational man in view of the surrounding circumstances; and no prudent man would drive heedlessly upon a rail road, and attempt to cross its track, till he had actually and fully ascertained that the track was clear, and that there was no danger. The allusion which the circuit judge made to the wood pile, in his charge, I think clearly erroneous. He made it an excuse for the plaintiff's intestate in driving heedlessly upon the track. It must have been so construed by the jury. I think all the exceptions to the charge, so far as they relate to the situation of the wood pile, and its influence on the relative rights and duties of the defendants and the plaintiffs' intestate, well taken, and that there should be a new trial; costs to abide the event.

WELLES, J., concurred.     JOHNSON, J., dissented.

New trial ordered.

[CAYUGA GENERAL TERM, June 7, 1858. *Johnson, Welles* and *Smith,* Justices.]