WILLIAMS *vs.* VANDERBILT.

What circumstances will import a contract by an individual, as a common carrier, to transport another from New York to California; and what will be sufficient, as evidence, when submitted to a jury, to authorize a verdict to the effect that such person held himself out as, and assumed the duty of, a common carrier.

A carrier of passengers from New York to San Francisco is bound to forward his passengers within a reasonable time; and when it is ascertained that one of the vessels forming the line has been lost, it is his duty to provide another with all reasonable diligence.

What amounts to reasonable diligence, in such a case.

Where one undertakes, as a common carrier of passengers, to carry a passenger the whole route from New York to California, he is liable for any breach of duty as such, notwithstanding separate tickets are issued to the passenger for the different portions of the route, signed by different persons.

What are proper items of damages, in an action for the breach of such a contract by the carrier.

Although the court might have come to a different conclusion from that of the jury, on the evidence, it is not at liberty, for that reason to disturb their verdict.

THIS was an action against the defendant as a common carrier, to recover damages for his failure to transport the plaintiff from New York to San Francisco, in March, 1852. The action was tried at the Cayuga circuit, in October, 1855, before Justice T. R. STRONG, and a jury. The plaintiff re-

covered a verdict for $850, damages. The defendant subsequently moved for a new trial, upon a case, at a special term held in Wayne county, in July, 1857, before the same justice; on which occasion the following opinion was delivered:

T. R. STRONG, J. "The first count in the complaint sets forth that the defendant was the owner of, and a common carrier by, a certain line of vessels and conveyances used and employed in the carriage of passengers from New York to San Francisco, by the way of Nicaragua; and as such, on or about the 5th day of March, 1852, at New York, received the plaintiff on board of one of the vessels of said line as a passenger, to be conveyed from New York to San Francisco, by the way of Nicaragua, for certain valuable hire and reward, whereby it became the duty of the defendant, as such owner and common carrier, to convey the plaintiff to San Francisco, by the way aforesaid, as soon as he should reasonably be able to do so, without any voluntary and unnecessary delay, &c., which duty the defendant did not perform; but, on the contrary thereof, unnecessarily and wrongfully detained the plaintiff at various places on the voyage, for the space of seventy days, or thereabouts, and wholly neglected and refused to carry the plaintiff to San Francisco, &c.; by reason of which premises the plaintiff was compelled to and did expend, during said detentions, large sums of money for his necessary support, and was made sick and debilitated, and subjected to other inconveniences and losses, &c. The complaint contains several other counts, but it is unnecessary to state particularly their allegations. One answer to the first count is a general denial. At the trial, evidence was given on the part of the plaintiff, tending to prove the matters of that count, except that it appeared the defendant did not own any part of the means of transportation across the Isthmus of Nicaragua, and that other persons were interested with the defendant in the ships of that portion of the line between the Isthmus and San Francisco

The court instructed the jury, that the basis of the action was, that the defendant' was a common carrier between the ports of New York and San Francisco ; that as such it was his duty to carry from New York to San Francisco all persons who purchased tickets and became passengers upon his vessels ; that it was his duty to carry them safely, and with ordinary expedition ; and that the duty of the defendant was violated in regard to the plaintiff, whereby the plaintiff had sustained damages. The jury were told that if the defendant was not such a common carrier, it would not be claimed by the plaintiff that the plaintiff was entitled to recover ; and it was submitted to the jury, upon the evidence, as the first question to be decided by them, whether the defendant was a common carrier, as alleged, with instructions as to what was essential to constitute him such. The jury were advised that if he was a common carrier, as alleged, it was his legal duty, on receiving the plaintiff on his steamer at New York, to be carried to San Francisco, to carry him by the vessels and in the mode in which he undertook to do it, with all ordinary expedition and all reasonable care, and with no unnecessary detention upon the route. The duty, however, was subject to this qualification, that if the defendant was prevented, by the act of Providence, from conveying the plaintiff in the mode in which he undertook to do it, to that extent the defendant was excused ; but he was required, in such a case, to do what he could, by the exercise of strict care and diligence, to discharge, in substance and spirit, his duty as carrier, so far as he was not so prevented. If he could not do it strictly in the manner agreed upon, he must do it in effect, according to the contract. If the plaintiff could not be carried in the vessel in which the contract said he should be conveyed, because the vessel was wrecked by the act of God, the defendant was under obligation to provide another as a substitute, as soon as it could be done by such care and diligence. If the jury should find the defendant was a carrier, it was next left to them to determine whether the de-

fendant performed his duty'as a carrier, to the plaintiff; and if they should find he did not, it was submitted to them, as the remaining question, what damage had been occasioned by the breach, to the plaintiff. In regard to the subject of damages, the jury were advised that so far as loss of time had been occasioned, by unnecessary delays and detentions, and so far as illness had resulted from unnecessary detention of the plaintiff upon the Isthmus, the jury had a right to take them into consideration; that they would regard loss of time, loss of health, and the expense resulting from it; that if the plaintiff had experienced loss of money, loss of health, detention upon the Isthmus, derangement of his plans, by reason of a violation by the defendant of an arrangement which he made, and which he assumed when he received the plaintiff on board his vessel, then they would render to the plaintiff full compensation.

The counsel for the defendants excepted to the submission to the jury of the question whether the defendant was a common carrier from New York to San Francisco; and it is now made a point, founded on that exception, that the facts relating to the undertaking of the defendant were undisputed, and that it belonged to the court to decide, as matter of law, as to the legal obligation of the defendant connected with that undertaking. The precise question intended to be raised, as I understand it, is that the tickets purchased by and delivered to the plaintiff, for the several portions of the route, were contracts between the parties issuing the tickets, respectively, on one side, and the plaintiff on the other, the construction and legal effect of which it was for the court to determine; and that their legal operation could not be varied by parol.

The ticket for the Pacific portion of the route, beyond designating the line, and route and name of the ship, the class and number of the ticket, stating that the ticket was not transferable, giving the date, and adding, "without berth," simply expresses that the plaintiff has paid for a second cabin passage in the ship, on her next voyage from San Juan del

Sur to San Francisco, to which is the signature, "D. B. Allen, Agent, per J. Rintoul." The ticket for the Atlantic portion of the line is in similar form ; and the form of the ticket for the Isthmus, beyond giving the number, stating that it is not transferable, and that it is good for the steamer of ____, adds, Mr. ____ is entitled to a passage across the Isthmus of Nicaragua, by the line of the Accessory Transit Company, baggage 15 cents per pound, no meals furnished ; and is signed "Isaac C. Lea, Secretary." There is nothing in these tickets inconsistent with the defendant being a common carrier for the entire route from New York to San Francisco, and having incurred the obligations of a common carrier in respect to the plaintiff, as is claimed in the complaint. The tickets for the Atlantic and Pacific ships are in entire harmony with that view. They are dated at New York, and have the caption, "Vanderbilt's Line for California, via Nicaragua," which words, in connection with the date being at New York, import a line from New York to California. The fact of separate tickets may be referred to convenience in transacting the business. In regard to the ticket for the passage across the Isthmus, assuming that the means of transportation on that part of the route were owned and controlled by the Accessory Transit Company, the defendant may have depended, for the purpose of his line, on purchasing and using the tickets of that company, as circumstances should require. It was not essential to his being a common carrier for the entire line, that he should own, or even control, the several conveyances employed. The tickets do not purport to be full contracts in respect to the carriage of the plaintiff, or to show more than that the plaintiff has paid for and is entitled to a passage over the different portions of the route, by the conveyances specified therein, and the arrangement as to berths on the ocean steamers, and the price for baggage, and that no meals were to be furnished in crossing the Isthmus. It is necessary to go behind the tickets for passage on the ocean, to learn that the defendant issued them, and to look into the business of

the defendant, and the circumstances of the transaction in regard to the sale and purchase of the tickets, to be able to determine the undertaking and legal obligation of the defendant as to the plaintiff. And in respect to all the tickets, I cannot perceive that they form any obstacle to the plaintiff proving that the defendant had organized a line for the entire route, and was engaged in the transportation of passengers over it as a common carrier, furnishing such tickets to passengers as evidence that they had paid their fare, and were entitled to a passage for the whole line ; such proof does not vary the tickets in terms or legal effect. It merely supplies facts essential in connection with the tickets, to show what the whole transaction was, of which the sale and purchase of the tickets was a part, and what obligations were assumed by the parties. If the defendant undertook, as a common carrier of passengers, to carry the plaintiff the whole route, he is liable for any breach of duty as such, notwithstanding the tickets ; in like manner as if the defendant's undertaking had been wholly verbal, and no ticket had been employed. There was clearly sufficient evidence tending to prove that the defendant was such a carrier, to call for the submission of the question whether he was so, to the jury ; and no exception was taken, nor is any objection now made to the instructions by the court, as to what constitutes a common carrier.

Other points made by the defendant rest on exceptions taken by him to the charge as to the obligation of the defendant. If the plaintiff could not be carried from San Juan del Sur to San Francisco by the North America, the vessel specified in the ticket for that branch of the line, because that vessel was wrecked by the act of God, the defendant was under obligation to provide another vessel as soon as it could be done by the exercise of strict care and diligence.

The designation, in the ticket, of a particular ship; as the ship in which the plaintiff was to have passage, would doubtless, if the vessel had not then been lost, or a loss had been subsequently occasioned by the act of God, as the destruction of

the vessel in a storm, have entitled the plaintiff to be carried in that ship, and limited the obligation of the defendant to carry, to that ship.  But I do not think the designation amounted to an absolute, unconditional contract to carry by that ship, from the obligation of which the defendant could not be relieved by such an act of God as aforesaid.  (*Bonsteel* v. *Vanderbilt*, 21 *Barb.* 26.)  As a common carrier, having received the fare of the plaintiff for the whole route from New York to San Francisco, and carried him from New York to San Juan del Sur, the defendant was under a legal duty to carry the plaintiff the residue of the route ; and the designation in the ticket of the vessel is a mere specification of the mode in which the duty was to be performed, and to that extent controlled the duty.  The duty was to carry by the vessel specified.  So far as there was a contract, it was implied by the law from the duty corresponding with it, and which would be determined by whatever would determine the duty.  And it is a rule well settled, that " where the law creates a duty, or charge, and the party is disabled to perform it, without any default in him, and hath no remedy over, the law will excuse him."  (*Aleyn's R.* 27.  *Harmony* v. *Bingham*, 2 *Kern.* 99, *and cases there cited.*)  The right of the plaintiff to a passage by the North America, and the obligation of the defendant to carry by that vessel, therefore terminated by its becoming impossible to use the vessel on the voyage, without any fault of the defendant, by the act of Providence.  It is highly probable, if not certain, upon the evidence, that the vessel had been lost when the ticket was purchased, but the plaintiff, and the defendant and his agents at New York, were mutually ignorant of the loss at that time ; and if the loss had then taken place, the specification of the vessel in the ticket had no force whatever.  The mistake of the parties, in supposing the vessel was in existence, rendered it wholly inoperative.  Assuming, however, that the loss was afterwards, but before the arrival of the plaintiff at

San Juan del Sur, by the act of God, the specification, as has already been stated, ceased to be binding.

The exemption from obligation allowed by the law to the defendant, on account of the loss of the North America, whether the loss was before or after the purchase of the ticket, does not necessarily embrace the entire obligation he incurred; it extends only so far as is necessary for the purpose of full justice to the parties. In 1 *Parsons on Contracts*, 184, 5, it is laid down that "the non-performance of a contract is not excused by the act of God, where it may still be substantially carried into effect, although the act of God makes a literal and precise performance impossible." And in *White* v. *Mann*, (26 *Maine Rep.* 368,) Shepley, J., says: "The rule relied upon, that if a thing becomes physically impossible to be done, by the act of God, performance is excused, does not prevail when the essential purpose of the contract may be accomplished. If the intention of the parties can be substantially, though not literally, executed, performance is not excused. (*Chapman* v. *Dalton*, 1 *Plow.* 284. 1 *E. J. Cas. Abr.* 18.") This doctrine must be limited in its application, in respect to acts occurring after a contract, to contracts which the law implies—mere legal duties. Thus an impossibility (subsequently arising from the act of God) to perform a contract made by a party, which is without any qualification determining it on that event, does not excuse from responsibility. (*Harmony* v. *Bingham*, *before cited, and cases there referred to.*) Applied to contracts and obligations created by the law, the doctrine is most sensible, salutary and just. In the present case, as is apparent from the evidence, the main object of the plaintiff in purchasing tickets was to be conveyed to California. By what particular vessels, so that they were suitable, was, and was regarded by him, of but little, if any, importance. He would as readily have purchased tickets for a passage by other vessels as by those named in the tickets he received. And the substance of the duty assumed, and intended to be assumed by the defendant, as a

Williams *v.* Vanderbilt.

common carrier of passengers, was to carry the plaintiff to California. As such a carrier, the law required of him to provide suitable conveyances and accommodations. By what particular conveyances he should carry the plaintiff was of secondary importance in regard to his duty, and principally of moment only in respect to his convenience. The vessels named in the tickets were specified therein, because, when the plaintiff applied for tickets, they were the vessels of the line in which the plaintiff could, in the usual course of business, obtain the earliest passage. The North America having been destroyed when the tickets were purchased, without the knowledge of the parties, or having subsequently, before the arrival of the plaintiff at the point where he was to take passage on that ship, by act of Providence, ceased to exist, the defendant, by providing another suitable vessel to take its place, might have answered the leading purpose of the plaintiff, and complied with the spirit of his own undertaking. To that extent the right of the plaintiff, and the obligation of the defendant, remained. The plaintiff was entitled to a passage over the route, and the defendant was under obligation to furnish it as soon as it could reasonably be done, notwithstanding the loss of the vessel. The law, on account of the impossibility thus created, of employing the specified vessel, qualified the right of the plaintiff, and the obligation of the defendant, as to that vessel, but left the right to a passage, and the obligation to procure it, as soon as another vessel for the purpose could be provided, in full force. To hold the defendant discharged from all obligation, as to the rest of the route, except perhaps to refund a proportion of the passage money applicable to it, and justified in leaving the plaintiff on the Isthmus, far from home, among strangers, in an unhealthy climate, with no means of prosecuting his journey, would violate the leading intention of both parties, in the sale and purchase of the tickets, and inflict on the plaintiff the most monstrous injustice. After careful exam-

ination and reflection, I am satisfied no error was committed in the portion of the charge under consideration.

If the views of the law of the case already presented are correct, the instructions to the jury, in respect to damages, were not, I think, erroneous. The defendant being a common carrier for the whole route, and having undertaken as such to carry the plaintiff, is liable to him for damages sustained, on account of defaults in crossing the Isthmus, as well as by reason of the default to carry the plaintiff from the Isthmus to San Francisco. The different subjects of damage mentioned in the charge—loss of time of the plaintiff, his sickness and expenses resulting from it, and the derangement of his plans, occasioned by the default of the defendant, were, I think, proper to be regarded by the jury. The expenses of his return to New York were a proper item to be considered, as he could not proceed on his route, and could not stay on the Isthmus, but was compelled to come back; and his sickness after his return home was as proper to be regarded as his sickness at any time previous. The derangement of the plaintiff's plans, mentioned near the close of the charge, obviously referred, and was understood by the jury to refer, to the breaking up of the journey, rendering it necessary for the plaintiff to return; and the full compensation in reference thereto which, it was stated, should be rendered, would naturally be understood to embrace the expenses and loss of time thereby incurred. No objection was made to the proof of any item of damage, on the ground that it was not specified in the complaint.

There was not, I think, in the rulings on the question of evidence, any substantial error committed calling for a new trial. It was proper to prove what was said between the plaintiff and Allen, the defendant's agent at New York, on the plaintiff applying to purchase a ticket; the proof of what was said by the man in the office, to whom the plaintiff was referred by persons in the office engaged in selling tickets, for information as to the character of the route, was given in support of the counts for fraud, and would have been proper,

if the counts had been good, in like manner as if said by the defendant himself. (1 *Greenl. Ev.* § 182.) But the court afterwards decided that the plaintiff was not entitled to recover upon these counts, and directed the jury to look at the case only as presented by the other counts; and if this proof had been erroneously received, that decision and direction would have cured the error. (*People* v. *Parish*, 4 *Denio*, 153.) The conduct and declarations of the officers of the Prometheus, at Greytown, related to the question of fraud, and if of any force before, were rendered harmless by the disposition made of the subject of fraud. The evidence of the unhealthiness of the climate on the Isthmus, the sickness of the plaintiff, and the expense of living there, and the accommodations on the boats in crossing, was all relevant and material. It tended to prove the damage to the plaintiff, by the default of the defendant, in crossing the Isthmus, and the default to carry the plaintiff forward in a reasonable time on his journey.

The evidence in the case submitted to the jury applied mainly to the first count, to which no objection is made. The case was submitted to the jury as presented by that count; and the verdict of the jury manifestly was upon that count; therefore, whether the other counts are good or bad, proved or unproved, is immaterial, as the court would, if necessary, direct an amendment of the verdict in form so as to conform it to the facts.

The jury have found that the defendant was a common carrier for the whole route, and there is no proof that Drew had any connection with the line, except that he owned, jointly with the defendant, the North America, running in the Pacific. He was not, therefore, a necessary or proper party to the action.

It is proper to add, that the cases of *Briggs* v. *Vanderbilt*, (19 *Barb.* 222,) and *Bonsteel* v. *The Same*, (21 *Barb.* 26,) are entirely unlike the present. One of those actions was against Vanderbilt and Drew, and the other was against them and the Accessory Transit Company. They were on contract,

and the proof failed to show a joint contract from New York to San Francisco, but did show a joint undertaking of Vanderbilt and Drew as to the passage from the Isthmus to San Francisco; and as to that, it was held, in each case, the plaintiff was entitled to recover back the amount of passage money paid by him with interest. In those cases, as appears by the opinion of the court in the first, (*p.* 239,) the complaint was not regarded as so framed as to present some of the principal questions in this case.

The court cannot, upon the evidence, interfere with the verdict, on the ground the damages are too high.

A new trial must be denied."

From the judgment entered at the special term in accordance with the above opinion, the defendant appealed to the general term.

*Wm. Clark,* for the appellant.

*George Rathbun,* for the plaintiff.

*By the Court,* E. DARWIN SMITH, J. Upon the question whether the defendant was a common carrier of passengers from New York to San Francisco, I think the verdict of the jury warranted by the evidence, and clearly right. It is not claimed that the law was not correctly stated to the jury by the circuit judge; and if it be true, as the counsel for the appellant claims, that the facts being undisputed, it was for the court to expound or interpret the contract, yet if the jury have found as the judge would have been bound to hold, no injury has been done to the defendant. The question remains, under the charge of the judge, in respect to the law, whether the verdict was right or erroneous, on this question. The action was not one on contract, where, as a general proposition, it is the duty of the court to construe and interpret the contract, but upon the duty on the principle of the old action on the case.

The advertisement of the line as "Vanderbilt's line between New York and San Francisco," giving the names of the ships on the Atlantic and the Pacific, and stating that "From San Juan De Nicaragua passengers would be promptly conveyed over the new transit route of the Nicaragua Company, having but twelve miles of land transportation, and at that point embark in one of the above named Pacific steamers for San Francisco;" and directing persons seeking passage to "apply only at the office of the line, No. 9, Battery Place;" with proof of the application by the plaintiff at *that place* for a passage to San Francisco, where over the door of the office he found a sign of "Vanderbilt's line for California," or "Vanderbilt's through line to California;" and where he received for the *entire* sum of $250, two tickets headed as follows, "Vanderbilt's line for California, via Nicaragua," one for the Atlantic and one for the Pacific steamer—with a third ticket for the transit route; with proof that the defendant owned the Atlantic steamers and was part owner of those upon the Pacific—all taken together, imported, in my opinion, a contract by the defendant, as a common carrier, to transport the plaintiff from New York to California; and were entirely sufficient, as evidence, when submitted to the jury, to authorize a verdict to the effect that the defendant held himself out as, and assumed the duty of, a common carrier for the entire distance.

In the case *Quimby* v. *Vanderbilt*, (17 *N. Y. R.* 310,) quite similar to this, the evidence was submitted to the jury to imply a contract, and this course was sanctioned by the court of appeals. The propriety of such a disposition of the cause on this point, at the circuit, is, I think, hardly an open question. It being settled, therefore, that the defendant was a common carrier from New York to San Francisco, it follows that he was bound to forward the plaintiff within a reasonable time, and when it was ascertained that one of the vessels on the Pacific was lost, it was his duty to provide another with all reasonable diligence.

Williams *v.* Vanderbilt.

Upon the assumption that the defendant was a carrier for the whole distance, this proposition, I suppose, can hardly be disputed. (*Beebe* v. *Johnson*, 19 *Wend.* 500. *Harmony* v. *Bingham*, 2 *Kern.* 99.) If it was the duty of the defendant thus to provide some new conveyance to transport the plaintiff from San Juan Del Sud to San Francisco, after the loss of the North America, we come then to the chief question of fact that remains. Did the defendant exercise all reasonable diligence in providing another vessel to take the plaintiff to California? This is the precise question submitted by the circuit judge to the jury, and which the jury, in finding a verdict for the plaintiff, have necessarily answered in the negative. Is this verdict clearly against evidence, or the weight of evidence? On this question of fact it seems to me the evidence was not very strong or conclusive. It was, however, purely a question for the jury. It was very fairly submitted to them. The charge of the judge was very guarded, careful and unexceptionable, and although we might have come to a different conclusion from that of the jury on the evidence, we are not at liberty, for that reason, to disturb the verdict. (27 *Barb.* 540.)

As respects all other questions and exceptions raised in the case, they have been so fully considered and discussed by the judge at special term, that I do not deem it expedient to examine them in detail, concurring as I do fully in the opinion then delivered.

The judgment of the special term, I think, should be affirmed.

Judgment affirmed.

[CAYUGA GENERAL TERM, June 6, 1859. *T. R. Strong, Johnson* and *Smith*, Justices.]