ACTION of trespass on the case with the usual pleas, for corporeal injuries sustained by the plaintiff in consequence of the alleged negligence of the servants of the defendants. The plaintiff was at the time in the service and employment of Jackson Sharp as a, mechanic in their Car Works or factory in the city of Wilmington, which is adjacent, or near to the main tracks of the railroad of the company, which had before the occurrence constructed a siding from it on the side next to their factory, and *Page 104 
which afterward by their request was extended by a curve along the length of and into it, at their expense and for their convenience in getting cars from their shops to the main track of the railroad. The straight and longer portion of it, however, remained the sole property of the company, and which had continued to use it for the general purposes of a siding to their main road from the time of its construction. A short time before the injury complained of befell the plaintiff, Jackson Sharp had purchased of the company a sleeping car which it had ceased to use, on condition that they would take it to pieces and the company should have all the iron and they all the other materials in it, and for that purpose it had been run up on their part of the siding in front of one of their shops, where the plaintiff and another workman in their employ, were at the time engaged by their directions in taking it to pieces. There were three new cars on the siding between it and the main track belonging to Jackson Sharp which they had that day requested should be run on to the main track in order to be sent off over the road and which the engineer of the shifting engine of the company had been ordered to do by the proper officer of it. They were however not coupled together, but were standing apart several feet from each other, and the old one on which the plaintiff was at work, was only a few feet from the car nearest to it, and who was standing on the siding between the two at work upon the bumper of the old one which he had just removed, when the shifting engine, after having been backed up twice and coupled with the other two, in backing up to connect with the third car forced it back against the old one, catching and carrying him several feet between the two cars and crushing and injuring him in his left side above the hip so badly that he was confined to his bed for several weeks, and was not able to resume work in the factory until four months afterward; nor then to do heavy work as well as before the accident, although his wages had since been increased in consideration of it. There was no bell rung, or whistle blown, or warning of *Page 105 
any kind given from the shifting engine of its approach upon the siding, but neither the engineer on the engine, nor the servant of the company who had left it and taken his position near the siding to signal to him to back up with care to make the coupling, saw the plaintiff at the time in his position between the two cars, or knew that he was at work there as before stated. That no chocks had been placed by him or any other person under the wheels of the cars next to the one on which he was working, which would have prevented the collision and the injury resulting from it to him, nor was there any cautionary signal set on or near it as is customary when repairing a car upon a siding to indicate to them that he was then so at work upon it, although it was usual in such cases to set out a blue flag in full view for such a purpose. It was also proved that the foreman who had charge and direction of the work upon the car on the siding, had frequently admonished the plaintiff that day of the danger of his position from the use of the shifting engine upon it, because, as he stated, he thought the men in running the trains in and out that day were doing it incautiously and recklessly, and that was his reason for so warning him.
Whitely, for the plaintiff. If the jury should find from the evidence that the siding in question, or the curved portion of it extending to and into the works of Jackson Sharp, either belonged to them as their property, or if belonging to the railroad company, that it permitted them to repair cars upon it and to keep cars standing on it, or any part of it for that purpose, and the plaintiff was at the time in their employ and engaged by their direction, or the direction of any of their foremen, in working on the old car which they were there breaking up or taking to pieces when the accident and injury occurred to him, then the court should instruct them that he was there law-fully and rightfully, and not as a trespasser, or as one wholly without any right to be there in contemplation of law. Flinn vs. P., W. B. R. R. Co., 1 Houst. 469. And *Page 106 
such would have been the conclusion of law on that point even if the car on which he was then at work, had been the sole and exclusive property of his employers, Jackson Sharp. But the case was stronger than that, for the proof showed that if it was not at that time the sole and exclusive property of the railroad company, it was at least, the joint property, or property in common of the company and Jackson Sharp who had received it from the company under an agreement that they were to perform this work upon it for their joint profit and benefit upon the terms stated in the evidence. The proof also was that the railroad company had never used, and had no right to use the siding mentioned above Seventh street, or the curved part of it extending from that street to their works, except to run off cars for them to and from the main track of the railroad, and then only at their will and pleasure; and that would in law impose upon the company the duty of exercising the utmost care and caution to avoid doing any injury to them or their property or persons in their service while so using it.
Harrington, (Gordon with him) for the defendant. The railroad company built and owned the siding on which the accident occurred. But the plaintiff contends that he was there rightfully and lawfully at the time, and was, therefore, not a trespasser on the property of the company. That we deny. But admitting it for the sake of argument, still if it had been proved that the accident was in any degree attributable to negligence, or want of due care and caution on the part of the servants of the defendant, and that it was also at the same time in any degree attributable to the negligence, or carelessness, or the want of due caution and prudence on the part of the plaintiff, or of Jackson Sharp whose agent and servant he then was, or, in other words, if it was the result of mutual carelessness and negligence on the part of all concerned at the time in removing the new cars from the siding, and in dismantling the old one upon it, then he would not be entitled to recover. *Page 107 
That was a sound principle of law and was subject to one exception or qualification only, and that is where the direct cause of the accident and injury is the omission of the other party, after becoming aware of the negligence of the other, or injured party, to exercise and exert on his own part a proper degree of care and effort to avert the result of such negligence. Shearm. Redf. on Neg. secs. 25, 38. Pierce on Am.Rail. Law 172. Bush v. Brainard, 1 Cow. 78. Negligence, however, is not always necessarily culpable in the eye of the law. It requires from no man superhuman wisdom or foresight, and no one is guilty of culpable negligence by failing to take precautions which no other man would be likely to take under the circumstances. Shearm. Redf. on Neg. sec. 34.
T. F. Bayard, for the plaintiff. Railroad companies were bound to use ordinary care and diligence to prevent doing an injury to either persons or property upon their tracks, but it was not the ordinary diligence which would be required of the proprietor of a stage coach, or other ordinary common carrier for the same purpose, owing to the greater danger and more serious and fatal injuries to which human life is exposed from the former than the latter; for it is their duty to exercise such care and caution against danger as the magnitude of the peril demands. The ordinary care to be used in the management of a railroad, may, therefore, and sometimes does, require precautions which, if used in any business involving less risk, would be deemed equivalent to the utmost care. Shearm. Redf. on Neg. sec. 477. And the ordinary care which railroad companies are bound to exercise is the utmost care and diligence, and for the purpose of avoiding accidents endangering life or property, to use all the means and measures of precaution that the highest prudence would suggest, and which it was in its power to employ. Shearm. Redf. on Neg. sec. 477 n. 1. Johnson vs. H. R. R. R.Co., 20 N. Y. 65. In running their trains or locomotives across public highways and thoroughfares, they must be held to *Page 108 
regulate their speed and to give such signals to persons passing, that all may be apprised of the danger of crossing their railroad tracks; and they should also keep a lookout so as to foresee, and as far as possible prevent peril or danger to others exercising their legal rights. A failure in any of these duties on their part should render them liable for injuries inflicted, and for wrongs resulting from its omission. But it is equally the duty of a person crossing the track of a railroad to be on his guard, and to see that he is not incurring danger to himself and his property; for he has no right to shut his eyes and close his ears to the danger he is liable to incur at such a place, and if he does, then he must be responsible for the consequences of his carelessness, unless the other party has been guilty of misconduct still more gross and willful. Chic. Rock Isl. R. R. Co. vs. Still,19 Ill. 499. When the engineer of a railroad train blows the whistle and rings the bell and runs it at a reasonable speed in approaching a crossing, he exercises reasonable and ordinary care, which is all the law requires.Toledo R. R. Co. vs. Goddard, 25 Ind. 185. In the case of the P. R. R. R. Co. vs. Hagan, 47 Penna. 244, it was held by the court that if the whistle was not blown, nor any other usual notice given of the approach of the train, the party injured had a right to presume that the track was clear, and that unless the jury were satisfied by affirmative proof that the party injured did not use ordinary care, the company was liable for the injury done him. And it had been ruled by this court that a railroad company is bound to provide skillful and careful servants, competent in every respect for the posts they are appointed to fill in their service, and is not only responsible for their possession of such skill and carefulness, but also for the continued application of these qualities at all times. Flinn vs. P., W. B. R. R. Co., 1 Houst. 500. He would, therefore, ask the court in view of the cases and authorities which he cited, to charge the jury under all the facts proved, in accordance with the principles of law thus clearly established by them. *Page 109 
 The Court,
That justice was to be administered in the case without respect to the character or pecuniary abilities of the parties. They had heard the evidence in regard to the railroad siding on which the injury to the plaintiff had occurred, by whom it was built and at whose expense, and the purpose for which that portion of it on which the accident had occurred was constructed, and that it had been used by the firm of Jackson Sharp and the men employed in their car works in repairing or finishing cars whilst standing upon it; but whether that had been done with the knowledge and consent, or acquiescence of the defendant, the railroad company, was a question of fact to be decided by the jury upon the evidence before them in regard to the matter.
The first legal proposition applicable to the case, and to all other cases of like character is, that the plaintiff in order to entitle himself to a verdict, must show by competent evidence to the satisfaction of the jury that the injury complained of was caused by the negligence of the defendants or their authorized agents, or servants, as they are frequently termed in the law, in their employ. They act by and through their agents or servants, and are responsible for their acts, as such agents, done or performed in the course of their usual and proper employment. It is well settled in law that railroad companies have the exclusive right to occupy, use and enjoy their railway tracks and siding, and such exclusive right is absolutely necessary to enable them properly to perform the duties of their employment as common carriers for hire incorporated by public statutes for that purpose; and any person going upon, using, or occupying a track or siding, or any part of the same, of a railroad company without the consent of the company, is held in law to be there wrongfully, and therefore, to be a trespasser, and in case of injury happening to his person or property whilst so a trespasser upon it from the movement of the engines or cars of the company over it, he is without remedy and cannot recover damages for the injury, unless it is at the same time proved by affirmative *Page 110 
evidence that the agents or servants of the company having the direction and management of such engines or cars, could by the exercise of ordinary care and diligence on their part, have prevented or avoided it under the circumstances, or that they willfully or wantonly did it. Such a company may, however, waive such exclusive right by consent and by conceding to others the privilege of using and occupying a portion of their track or siding for standing or repairing their cars upon it, or for any other purpose the company may see fit; and any person thus using or occupying the same with the consent of the railroad company, would be there rightfully, and, of course, not as a trespasser. And such consent may either be express or implied. Express consent is when the consent is actually proved to have been expressly granted by the party giving it; implied consent is when it is not so proved, but is to be reasonably inferred or presumed from all the attending circumstances that the party, at least, tacitly assented to it. If it had been actually proved in this case that the defendants, the railroad company, had expressly consented to the use of the siding in question, or any portion of it, by Jackson Sharp for repairing their cars upon it, or for taking to pieces the particular car on which the plaintiff was at work when he received the injury in question, there could be no room for doubt or dispute that he was there rightfully, and not wrongfully; but as there had not been such proof produced or offered in the case, it would be for the jury to determine from all the facts and circumstances disclosed in the evidence which they had heard in the case, whether or not it is reasonable to infer and presume that the defendants, at least, permitted, assented to, or acquiesced in such use by Jackson Sharp that part of the siding on which the car was standing upon which the plaintiff was at work at the time when he was injured. And if after carefully considering and weighing all the facts and circumstances proved, they should conclude that there was such an implied consent on the part of the defendants to such use of it, then the *Page 111 
plaintiff was there rightfully, and not wrongfully, when he received the injury complained of.
But he would further say that if they were satisfied from the evidence that the portion of the siding in front of Jackson Sharp's shops on which the dismantled car was standing, was the joint property of the railroad company and that firm, or was occupied and used by them jointly for their mutual convenience in their respective occupations and uses of it, and that it was the practice of that firm to have work, such as repairing and finishing, done upon their cars while standing on the siding in front of their shops, then and in that case also the plaintiff was rightfully, and not wrongfully, on the siding when he was injured. And the same, of course, would be the case, if they should be satisfied from the evidence that instead of being joint owners with the railroad company, Jackson Sharp were the exclusive owners and proprietors of that part of the siding at the time. And that in any or either of the cases supposed and stated by him, the defendants were bound through their agents or servants who on that occasion had the management and direction of their shifting engine and the removal of the new cars belonging to Jackson Sharp from that part of the siding, to use ordinary care, diligence and prudence in backing the engine to make the coupling or connection with those cars, to prevent and avoid the contact and collision between them and the dismantled car on which the plaintiff was then at work, standing on the siding between it and the new cars before mentioned, and the injury which resulted from such contact or collision to him. The terms ordinary care and diligence when applied to the management of railroad engines and cars in motion must be understood, however, to import all the care and circumspection, prudence and discretion which the peculiar circumstances of the place or occasion reasonably require of such servants, and this will be increased or diminished according as the ordinary liability to danger and accident and to do injury to others is increased or diminished in the movement and operation of *Page 112 
them. For instance to illustrate the meaning of it in the present case. This accident occurred in shifting cars from a siding. If on that occasion the engineer on the shifting engine knew the position in which the plaintiff then was upon the siding, reason would have dictated and required the exercise of much greater care and caution and the application of less motive force and power in backing his engine to make the coupling with the new car next to him, than it would have required if the plaintiff had not been in such a dangerous position on the siding, or if the engineer did not know that he was there at that time.
But on the other hand it is equally well settled as a principle of law, that the plaintiff was also bound at the same time to use ordinary prudence, care and diligence to avoid the accident and injury which occurred to him on that occasion. Because it is not only an instinct of our nature and a dictate of reason, but a duty which the law imposes with respect to the legal responsibilities of others, upon every person, no matter how he may be engaged, or what may be his position, to use ordinary care for his own protection and security against such accidents. And the care and diligence which he is bound to exercise, must be in proportion to the danger to be avoided; that is to say, he is bound to use such care, prudence and diligence as a reasonably prudent man under the peculiar circumstances of the case, would exercise to preserve himself from being injured. You will, therefore, perceive that although the plaintiff may have been there rightfully, it was the duty of both parties to use ordinary care, prudence and vigilance to avoid the accident. The obligation was mutual in that respect, and if both failed to use proper care and diligence to avoid it, they were each in the eye of the law, and of reason likewise, guilty of negligence in reference to it. And" if the jury should be satisfied from the evidence that the plaintiff did not use ordinary and proper care and prudence on the occasion under all the facts and circumstances proved to avoid the accident and injury sustained *Page 113 
by him, then his consequent negligence in contemplation of law contributed to it, and at the same time the law would hold that if his negligence contributed in any degree to the happening of the injury to him, he is not entitled to maintain the action, or to recover any damages for it. Because if he thereby contributed to it, the jury could not ascertain and determine in what degree or proportion his negligence alone contributed to it, in measuring the damages to be allowed him for it, and, therefore, it is an established rule of law in such cases, that where both parties are in fault and have failed to exercise the diligence due from each of them on the occasion, and the plaintiff has by his own negligence contributed to the result complained of, he shall not be entitled to recover any damages whatever for it.
If, however, the jury should be satisfied from all the evidence in the case that the servants of the defendants did not use ordinary care and diligence on the occasion, and that in consequence of their negligence alone the accident and injury complained of happened to the plaintiff, he would be entitled to recover in the action, and their verdict should be in his favor for such an amount of damages as it had been proved he had sustained by the injury, and which should be precisely equal to and commensurate with it.
 The plaintiff had a verdict for $5000.