The Louisville, New Albany and Chicago Railway Co. *v.* Stanger.

No. 587.

## The Louisville, New Albany and Chicago Railway Company *v.* Stanger.

Railroad.— *Noise Incident to Operation.* — *Frightened Team.* — *When Negligence to Give Statutory Signals.* — *When Train Should be Stopped or Speed Slackened.*—Railway companies, in the operation of their roads, have the right to make all the noise necessary and incidental to such operation, as the escaping of steam, rattling of cars, etc., and of this right the public must take notice; but the sounding of a locomotive whistle is a voluntary act upon the part of the servants in charge of the road, which, under many circumstances, may be rightfully done; but if, in approaching a crossing, the engineer should see and know that a traveler upon the highway is in imminent peril, from a frightened team, on account of the approaching train, it is his duty to refrain from giving the statutory signals, and slacken the speed of the train, and come to a stop, if possible, before reaching the crossing. If, however, the train has reached the point where the law requires the signal to be given, and it is uncertain whether or not the train can be stopped before reaching the crossing, he must give the signals, and negligence can not be imputed to such acts.

Same.—*Imposed Duties.*—*Prevention of Injury.* — *Care.*—Unnecessary and onerous burdens should not be imposed upon railway companies in the operation of their roads, but it is proper that they should be required to be diligent and make all reasonable efforts to prevent injury to persons or property; and the degree of hazard in a great measure controls the degree of diligence required.

Opinion on petition for rehearing by Lotz, J.

Separate opinions by Reinhard, J., and Davis, J.

Dissenting opinion by Ross, J.

From the Monroe Circuit Court.

*E. C. Field* and *W. S. Kinnan,* for appellant.

*J. R. East* and *W. H. East,* for appellee.

Fox, J.—The complaint in this case was in two paragraphs. A demurrer was filed to each paragraph, and overruled. A general denial was then filed, and, upon the issue thus joined, the case was tried by a jury. Upon

The Louisville, New Albany and Chicago Railway Co. *v.* Stanger.

a proper motion made, a special verdict was returned. Upon the facts thus found, the court gave judgment in favor of the appellee.

At the proper time the appellant filed a motion for a *venire de novo*, also a motion for a judgment in his favor upon the special verdict.    Both these motions were overruled by the court.    A motion for a new trial was also filed and overruled.

Proper exceptions to the ruling of the court upon these motions were taken and the case was appealed to this court.

The appellant assigns the following errors in the record:

1.  The court erred in overruling appellant's motion for judgment in its favor upon the special verdict of the jury.

2.  The court erred in overruling appellant's motion for a *venire de novo*.

3.  The court erred in overruling appellant's motion for a new trial.

4.  The court erred in overruling appellant's demurrer to the first and second paragraphs of the complaint.

The action was brought for the recovery of damages for personal injuries which the appellee alleged he received by reason of the negligence of appellant's servants.

Appellant's counsel waive the fourth assignment of error by not discussing it in their brief.    For this reason it will not be regarded in this opinion.

Counsel strenuously insist in argument that the facts as found by the jury in the special verdict do not warrant the judgment rendered by the court.

The special verdict was in substance as follows:

That on the 5th day of December, 1890, the appellee was engaged in hauling with a wagon and a team of horses, across the appellant's railway, from a stone quarry; that in so going to and from where he was hauling, it

was necessary for him to pass along a public highway running north and south, parallel with said railway and about fifty yards west of it; that, on the west of said highway there was a creek and a plank fence over which a team and wagon could not pass; that, on the east of said highway, the railway extended from the town of Ellettsville north in almost a straight line to a point where it crosses said highway; that there was no other outlet between said points; that the said team of horses were usually gentle and quiet, and were, at the time aforesaid, being driven by the appellee in a careful manner along said highway in a northerly direction; that, where said highway crosses a street in said town, a train of cars can be seen approaching from the south about one thousand feet; that at this point appellee stopped his team and looked and listened in order to ascertain if a train was coming from the south, but he did not see or hear any; that he then proceeded along said highway northward; that, after going about one hundred and fifty yards, "an irregular freight train, not on schedule time, bound north, passed through said town, and from the steam, noise, and approach of which said horses took fright and started in a trot along said highway, whereupon the appellee, holding the reins in his left hand, set the brakes on his wagon with his right, and thus checked said team," when the engineer sounded the whistle three or four times, and permitted steam to escape from his engine, which frightened the horses so that they became unmanageable and ran northward along said highway until they came near to the point where it crosses said railway, and thus coming near the train which was running with great speed, and was at the time crossing the said highway, they suddenly turned to the west, ran over said fence and down the embankment of, and into, said creek, breaking the appellee's arm and otherwise injur-

ing him; that, at the time the horses started to run, they were "about one hundred yards north of, and in front of, said train," which was running about twenty miles an hour; that at the time there was an engineer, fireman, and brakeman on said train who saw the horses running away, and who at the time knew and understood the situation and condition of said highway, yet, notwithstanding, they made no effort to stop or check the speed of the train, "but willfully and carelessly increased the speed thereof, issuing sharp whistles, and putting on an extra amount of steam, and gradually coming up even with and opposite said team so running away"; that immediately north of a highway crossing in the said town, at a curve, is a whistling post, marking the spot where the engineer of a train is required to sound his whistle for the highway crossing south of said town; that there is another whistling post about half way between said town and the highway crossing where the appellee was injured; that the engineer sounded the whistle four times at each of said posts; that just prior to the sounding of the whistle in said town, the appellee had got his horses partly under control, and the brakes set on his wagon; that if the engineer had not sounded the whistle the accident would not have occurred; that if those in charge had "checked and slowed up the train," the appellee would have passed the crossing and would not have been injured; that if the brakes had been properly applied, and the said employes had done their duty, the train could have been stopped entirely "or so checked and slowed up, and thus have prevented the injury"; that the train, in approaching said town, gave no signal of its approach; that, from the time the horses started to run away with the appellee, the persons in charge of the train were in a position to see and know that the plaintiff was in great danger of losing his life or of receiving

great bodily harm, and that his safety depended upon his either stopping his team or in passing said crossing in advance of said train, but that said train outrun said team and closed up the only avenue of escape; that "the appellee received his injury by the careless and willful conduct of the employes in the management of said freight train, and without fault on his part."

The evidence is properly in the record.

Counsel for appellant have filed an elaborate brief, in which they contend that the facts, as found by the jury in the special verdict, do not show negligence on the part of the company's servants who were in charge of the train at the time the appellee was injured.

We have carefully read the special verdict, together with the evidence given at the trial. The facts, as found by the jury, substantially respond to the allegations in the complaint. In this respect the verdict is unobjectionable. As far as proof of the facts involved was concerned, there was a material conflict in the testimony of witnesses.

This, under the settled rules of this court, resolved itself into a question of credibility for the jury to determine. This they did by ascertaining the facts and stating them in the verdict. The facts as found were fairly established by the evidence. The legal effect of the facts thus found will determine whether the judgment of the court below must stand or fall.

Desiring to give the learned counsel for the appellant the full benefit of their theory concerning the rules of law applicable to the facts as established by the verdict, we give here the quotations they make in their brief from decisions of eminent respectability:

"A railroad corporation, having a chartered right to run its trains, has necessarily the right to make all reasonable and usual noises incident thereto, whether occa-

sioned by the escape of steam, rattling of the cars or other causes.'' *Whitney* v. *Maine, etc., R. R. Co.,* 69 Me. 208.

''By being empowered to run their trains over their road, the defendants have necessarily the right to make the reasonable and usual noises incident thereto, whether occasioned by the escape of steam, the rattling of the cars over the track or in any other manner. Although such noises may cause much annoyance and danger to those who are driving horses in the immediate vicinity, they must be prepared for them.'' *Norton* v. *Eastern R. R. Co.,* 113 Mass. 366.

''The frightening of horses or teams, and injury resulting therefrom, by the cars and other property of a railroad, and the legitimate use thereof, at the depot or other place of the company, is not a ground of action against the company, if the company do no more than use the same in a proper manner.'' Rorer on Railroads, 704.

''Railroad companies are not liable for frightening animals by their locomotives, cars or carriages, even though the fright causes the animals to kill themselves. This question has been carefully considered and fully settled by this court.'' *Baltimore, etc., R. W. Co.* v. *Thomas,* 60 Ind. 107.

''The frightening of a horse is a thing that can not be anticipated and is governed by no known rules. In many instances a spirited road horse will pass in safety an obstruction that a quiet farm horse will scare at. A leaf, a piece of paper, a lady's shawl fluttering in the wind, a stone or stump by the wayside, will sometimes alarm even a quiet horse. * * * If a farmer may not have a barrel of cider, a bag of potatoes, a wheel-barrow, or a wagon standing on his premises by the wayside, except at risk of having his whole establishment swept away in an

action for damages occasioned by the fright of an unruly horse, the vocation of agriculture will become perilous indeed." *Pittsburgh, etc., R. W. Co.* v. *Taylor,* 104 Pa. St. 306.

"When the whistle is negligently and wantonly sounded, so that horses lawfully in the vicinity are caused to run off and injury is inflicted, the company is liable. Of course the mere sounding of the whistle can not be deemed negligence, although blown in close proximity to the highway, and even though there are horses in the immediate vicinity." Whar. on Neg., section 837.

"The duty which such managers are under to persons traveling with teams on a highway is a limited one at the most, and one that should never be permitted to interfere in the slightest degree with the higher duty they owe to their own passengers, and to persons upon grade crossings. Under no circumstances are they required to exercise more than ordinary caution and care towards persons traveling on a highway. * * * A railroad company has authority to operate its road in the usual and ordinary way, including the right to make all noises incident to the working of its engines and cars, and also the right to give the usual and proper signals of danger, as by the sounding of whistles, or the ringing of bells; and, while exercising such rights, in a reasonable manner, the railroad company is not liable for injuries occasioned by horses, when being driven on a highway, taking fright at such noises. *Bailey* v. *Hartford, etc., R. Co.,* 37 Am. & Eng. R. R. Cases, 483.

"Being authorized to use steam as a propelling power of these engines, the smoke and noise of steam escaping are indispensable, as well as the noise occasioned by the cars and the usual notice bells; and the company would not be liable for mere accidents arising from fright to

horses occasioned by these noises.'' *Burton* v. *Philadelphia, etc.*, *R. R. Co.*, 4 Harr. (Del.) 252.

To recognize the doctrine laid down in the foregoing authorities is but to follow a beaten track. Many others might be cited to the same effect.

It is a matter of universal knowledge that in this, as in all other civilized countries, railroads have become a public necessity, and, in order to successfully operate them, many public inconveniences must be submitted to. It is impossible to construct railways without crossing the traveled highways of the country. Noise from escaping steam and from the movement of trains can not be avoided. Such noise, as well as the appearance of trains, will often frighten horses and render them unmanageable. This the public must understand and be prepared for.

Upon the other hand, railway companies are required to regard the public welfare by operating their trains with care and caution and produce as little inconvenience as possible, everything considered.

An act may be lawful and proper in one place, that, under different conditions and circumstances, would be entirely improper and unlawful in another.

Sounding a locomotive whistle is a voluntary act upon the part of the servants in charge. Upon many occasions, an engineer may lawfully sound his whistle. When approaching a public highway crossing, he is, by law in this State, required so to do. Circumstances may exist, however, that would render such an act the grossest negligence.

If an engineer sounds his whistle upon a proper occasion, and in so doing he frightens a team of horses so that they become unmanageable and do injury, negligence will not be imputed to him by reason of the act, unless there are circumstances within his knowledge, ad-

The Louisville, New Albany and Chicago Railway Co. *v.* Stanger.

monishing him that injury will probably result if the act was done.

"The mere sounding of the whistle can not be deemed negligence, although blown in close proximity to the highway, and even though there are horses in the immediate vicinity." *Billman* v. *Indianapolis, etc., R. R. Co.,* 76 Ind. 166.

If the servants of a railway company are guilty of no improper conduct, the fact that a team "took fright at the sound of the whistle, the noise and smoke of the train, can not make it liable. The liability, if any exists, must rest upon some heedless or unnecessary act which was likely to and did produce the fright of the team." *Cincinnati, etc., R. W. Co.* v. *Gaines,* 104 Ind. 526; see, also, *Culp* v. *Atchison, etc., R. R. Co.,* 17 Kan. 475; see, also, this question discussed in Whar. on Neg., sections 389, 394, 803.

Section 2178, of the R. S. 1881, requires an engineer, in charge of a train, "when approaching any road crossing to sound the engine whistle at a distance of not more than one hundred nor less than eighty rods from such crossing."

The requirements of this statute are in the interests of the public. The sounding of the whistle is required, that persons who are at or near the crossing may be warned that a train is approaching. Circumstances may exist, however, that would render the act of sounding the whistle, as required in this statute, an act of negligence. In the practical application of the statute, regard must be had to its object and purpose. It should not be applied under circumstances that would make it accomplish the very object it was intended to prevent.

If an engineer, in approaching a point where it is his duty to sound his whistle under the requirements of the statute, observes near by a man struggling with a team

of horses, hitched to a vehicle in which are women and children, and can see from the surroundings that sounding his whistle will render the team unmanageable, and thus greatly endanger the lives of such persons, it would be his duty to desist until the danger point was past or stop his train.

The situation of the parties are essentially different. The engineer has control of his train, a runaway team is beyond control and is always attended with great danger. To say that railway companies, in the management of their trains, are not required to prevent accidents, whenever it is in their power so to do without serious inconvenience, would be an anomalous doctrine.

It appears from the facts, as found in this case, that immediately north of the highway crossing in the town of Ellettsville there is a whistling post marking the spot where the whistle should be sounded in approaching the highway *south* of said town, while further north, about half way between said town and the highway where the appellee was injured, is another whistling post, marking the spot where the whistle is required to be sounded in approaching said highway north of said town.

After the appellee had looked and listened for trains at the highway in said town, he started north, and after going about one hundred yards the train came up behind him from the south without sounding the whistle in approaching said town; that "from the steam, noise, and approach of said train his horses took fright and started north along said highway in a trot. After going a short distance, the appellee, by holding the reins in his left hand and applying the brakes on his wagon with his right, succeeded in checking his horses and getting them partly under control.

While the appellee was thus struggling with his horses, he was in full view of the engineer, when the engine was

MAY TERM, 1893.          189

The Louisville, New Albany and Chicago Railway Co. v. Stanger.

near to and approaching him.  The engineer at this time, without any good cause shown for so doing, permitted steam to escape from his engine, and gave "three or four sharp whistles."  The train having passed the highway south of said town, he was not required to give the statutory signal at the first whistling post, for that post marked the whistling point for trains going south. The whistling post for the highway north of said town had not been reached by a considerable distance, and the engineer was not required to sound the whistle until it was reached.  When the whistle sounded, the horses "took new fright," and at once became unmanageable and ran away along the highway towards the point where it was crossed by said railway, and towards which said train was approaching at the speed of about twenty miles an hour.

It will be remembered that from the point where the horses started to run northward, the highway and the railroad ran parallel and about fifty yards apart until near the crossing.  While the horses were running they were in plain view of the engineer, who, together with the fireman, watched them from the cab window.  The engineer could also see that the horses were beyond the control of the appellee, and were hemmed in by the railroad upon one side and the creek and fence upon the other, and that his only chance of escaping was by crossing the railroad in advance of the train and continuing north along the highway.  It was also apparent to the engineer that if the train continued its speed there would be great danger of colliding with the team at the crossing; that if this was avoided by the train reaching the crossing first, then the only avenue of escape for the horses was cut off.

Notwithstanding all this, the engineer made no effort to stop or check his train, but on the contrary slightly

increased its speed. When the horses reached the crossing, the locomotive and two or three cars had passed. Thus the highway was blockaded by the train, leaving the appellee helpless with no chance to escape, making an accident inevitable, as the engineer could observe after he had brought about the circumstances.

The horses, finding the highway blockaded, ran up near the train, then turning suddenly to the west, broke through the fence and ran headlong down the bank into the creek. All this was witnessed by the engineer. After the horses had fallen headlong into the creek, the engineer did not stop his train, but kept on his way, leaving the appellee in his helpless condition to take care of himself.

It manifestly appears that the appellee was without fault in the premises. It was not in his power to avoid the accident, for he could not control his horses. As much, however, can not be said for the engineer. He knew that the train had frightened the horses and caused them to run away. He knew that he had control of his train and could check its speed or stop it, and that by so doing a serious accident would probably be avoided. The jury so found in their verdict. The jury further found that appellee's injuries resulted from the negligent conduct of the engineer, and we think the evidence sustains the finding.

Appellant's counsel insist that the engineer sounded his whistle at a point where the statute required him to sound it. We do not so understand the finding of the jury. When the whistle was sounded, the whistling post for the north crossing had not been reached, and the highway south of said town had been passed. Even if the proper point had been reached, and the engineer could see that the appellee's horses were frightened, and that if he whistled it would add to their fright and probably

The Louisville, New Albany and Chicago Railway Co. *v.* Stanger.

cause a serious accident, he should have refrained until he had passed them.

Unnecessary and onerous burdens should not be imposed upon railway companies ·in operating their lines. Yet it is proper that they should be required to be diligent and make all reasonable efforts to prevent injuries to persons or property. The degree of hazard in a great measure controls the degree of diligence required. *Toledo and Wabash R. W. Co.* v. *Goddard*, 25 Ind. 185; *Indianapolis, etc., R. W. Co.* v. *Beaver*, 41 Ind. 493.

For the reason that it appears that the injuries received by the appellee were caused proximately by the negligent conduct of appellant's servants, without fault on his part, the judgment is affirmed.

The judgment is affirmed, with costs.

Filed October 27, 1892.

### On Petition for a Rehearing.

Lotz, J.——The appellant has presented a petition for a rehearing, in which the former decision of this court is assailed with great vigor.

There are some acts charged in the complaint, which do not, in our judgment, constitute negligence, and there are some facts found by the special verdict that are not alleged in the complaint, and which do not constitute negligence. Eliminating from the special verdict all such facts and all conclusions of both law and fact, as we may do (*Pittsburgh, etc., R. W. Co.* v. *Adams*, 105 Ind. 151), the question arises whether or not there are facts alleged and found remaining sufficient to support the judgment rendered by the lower court.

In their brief, appellant's counsel admit that there are two acts of alleged negligence which are averred in the complaint and found by the jury:

"1st. That appellant, knowing that appellee's team

was running away, and that appellee was in a place of danger, blew the engine whistle three times; and

"2d. Made no effort to stop or check the speed of said train, but willfully and carelessly increased the speed thereof."

It is earnestly insisted that the evidence does not sustain either of these findings. We have examined the evidence, and find it conflicting on both of these points.

It is the settled rule that this court will not disturb the judgment under such circumstances.

It is further contended that as the law made it the duty of the engineer to give the signal by sounding the whistle for the highway crossing, negligence can not be predicated upon an act which the law requires to be done. The former opinion of this court is severely criticised.

Counsel for appellant, with remarkable force and clearness, say: "Can it be said to be the law that when an engineer sounds the whistle of his engine in strict obedience to the statute, he may be guilty of negligence? Must he, while holding in his hands the lives and property entrusted to his care, dashing along at the rate of fifty or sixty miles an hour, with all his cares, in the twinkling of an eye transform himself into a witness, jury, and court, survey the surroundings and determine with absolute accuracy, above the possibilities of criticisms, whether he shall obey the law, and be guilty of gross negligence thereby, or disobey the law and see before him a threatened fine for himself and damage suit for his company, and maybe death to his passengers?

"The statute requires that the whistle shall be sounded not more than one hundred nor less than eighty rods from the road crossing. The signal must be given within this space. This distance of twenty rods is often traveled in four seconds of time, and yet the engineer must look at the team, determine how fast it is running, how

badly scared it is, how strong and capable the driver, what probable effect the sounding of the whistle will have on the scared team, and determine with accuracy whether the "exception applies," and he is justified in running on quietly and probably creeping upon some driver about to cross, and who has, with all due diligence, listened for the warning guaranteed to him by law for his protection, and dash him and his carriage load of passengers into eternity.

"Would any jury and court, with days of deliberation and the facts laid before them by witnesses from every standpoint of observation, be able to determine just how fast the team may be running, just what conditions must exist to justify the engineer in disobeying the statute?

"In this case the horses were almost under control, the speed checked, and if it had not been for this crossing whistle, they would not have become unmanageable. This was a much traveled road, and can it even now be said that the sounding of the whistle on this very occasion did not give the required warning and save the lives of a dozen people who otherwise would have come upon the track at the crossing, with no knowledge of the approach of this irregular train.

"In the opinion it is laid down as the law that 'upon many occasions an engineer may sound the whistle lawfully. When approaching a public highway crossing, he is by law in this State required so to do. Circumstances may exist, however, that would render such an act the grossest negligence. If the engineer sounds the whistle upon a proper occasion, and in so doing he frightens a team of horses so that they become unmanageable and do injury, negligence will not be imputed to him by reason of the act, unless there are circumstances within his knowledge admonishing him that injury will probably

result if the act was done.  The mere sounding of the whistle can not be deemed negligence, although blown in close proximity to a highway, and even though there are horses in the immediate vicinity.'

. "The finding in this case is that 'said horses took fright and started in a trot along said highway, whereupon the appellee, holding the reins in his left hand, set the brakes on the wagon with his right and thus checked said team,' when the engineer sounded the whistle.

"Can it be said as a proposition of law that an engineer is excused from sounding the warning whistle for a crossing, when he sees a team scared and then checked up? Would he even be justified in neglecting to give the statutory signals under such circumstances?  Surely the danger would have to be a great deal more apparent to make it negligence to sound the whistle in obedience to the statute."

After considering the cogent reasoning of counsel we have reached the conclusion that there may be expressions in the former opinion that do not accurately state the law as applied to the facts of this case.

A moving train of cars is always attended with danger to those who may be on board and to those who may be near a highway crossing.  The danger is enhanced in the ratio of the increased speed of the train.

The law imposes upon a railway engineer the positive duty of giving the statutory signals in approaching a highway crossing, and inflicts a penalty for the violation of this duty.  If, in approaching the crossing, he should see and know that a traveler upon the highway is in imminent peril on account of the approaching train, it is his duty to refrain from giving the statutory signals, and slacken the speed of the train and come to a stop if possible before reaching the crossing.  If, however, the train has reached the point where the law requires the

The Louisville, New Albany and Chicago Railway Co. *v.* Stanger.

signal to be given, and it is uncertain whether or not the train can be stopped before reaching the crossing, he must give the signals, and negligence can not be imputed to such acts.

We think there are at least two acts of negligence, the failure to check the speed and increasing the speed of the train, that were both alleged and found by the jury sufficient to support the judgment.

Petition overruled.

GAVIN, C. J., concurs in the result.

ROSS, J.—I think the petition should be granted.

Filed June 24, 1893.

### SEPARATE OPINION.

REINHARD, J.—I agree with the conclusion reached in the original opinion. Whether I could endorse all the reasoning of the learned judge who rendered it, it will not now be necessary to decide.

Filed June 24, 1893.

### SEPARATE OPINION.

DAVIS, J.—I concur in the conclusion reached in overruling the petition for rehearing. On the facts as found in this case, I am not prepared to say that the sounding of the whistle on this occasion constitutes negligence; but, in my opinion, there may be circumstances under which it would be negligence to sound the whistle at a point enjoined by the statute.

Filed June 24, 1893.